## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY<br>Debtor<br><br>UNION DE TRABAJADORES DE LA INDUSTRIA ELECTRICA Y RIEGO (UTIER)<br><br>Plaintiff,<br><br>v.<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; JOSÉ B. CARRIÓN III; ANDREW G. BIGGS; CARLOS M. GARCÍA; ARTHUR J. GONZÁLEZ; JOSÉ R. GONZÁLEZ; ANA J. MATOSANTOS; DAVID A. SKEEL, JR. AND JOHN DOES 1-7.<br><br>Defendants | PROMESA Title III<br><br><br>NO. 17 BK 4780-LTS<br><br><br>(Jointly Administered)<br><br><br><br>ADV. PROC. NO.: 2017-_____ |

## ADVERSARY COMPLAINT

TO THE HONORABLE COURT:

Comes now Plaintiff, Union de Trabajadores de la Industria Eléctrica y Riego, (UTIER), through its attorneys, Bufete Emmanuelli, C.S.P., for their Adversary Complaint against defendants: the Puerto Rico Electric Power Authority; the Financial Oversight and Management Board for Puerto Rico; José B. Carrión III ; Andrew G. Biggs; Carlos M. García; Arthur J. González; José

R. González; Ana J. Matosantos; David A. Skeel, Jr. and John Does 1-7 (collectively, the "Defendants"), and alleges, states, prays, and requests relief as follows:

## I.    NATURE OF THIS ADVERSARY PROCEEDING

1. On June 30, 2016, the President of the United States signed the Puerto Rico Oversight Management and Economic Stability Act[1] (PROMESA) into law. Said legislation seeks to tackle the fiscal emergency in Puerto Rico and is designed to institute a "comprehensive approach to Puerto Rico's fiscal, management and structural problems and adjustments... involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process."[2] The statute provides for the establishment of a seven-member (7) Oversight Board ("OB") for Puerto Rico with the purpose of providing a method for the island to achieve fiscal responsibility and access to the capital markets.[3]

2. Congress enacted this chapter pursuant to Article IV, Section 3 of the Constitution of the United States, which provides Congress the power to dispose of and make all needful rules and regulations for territories.[4]

3. According to PROMESA, the OB in its sole discretion may designate any territorial instrumentality as a covered entity by the Act and subject to the requirements of PROMESA.[5] It may also require the Governor to submit to the OB budgets and monthly or quarterly reports regarding a covered territorial instrumentality and may designate any

---

[1] 48 U.S.C. § 2101 et seq.
[2] *Id. at* § 405(m)(4).
[3] *Id*. at § 101(b)(1).
[4] *Id*. at § 2121(b)(2).
[5] *Id*. at § 2121(d)(1)(A).

covered territorial instrumentality to be included in the Territory Budget.[6] It can also require separate instrumentality budgets when those budgets do not require legislative approval under applicable territory law.[7] The same principle also applies to the fiscal plans of the above mentioned instrumentalities and the OB may also decide which instrumentalities are excluded from the provisions of PROMESA.[8]

4. The OB shall consist of seven members appointed by the President and the members must meet the following qualifications;[9]

> "(1) has knowledge and expertise in finance, municipal bond markets, management, law, or the organization or operation of business or government; and (2) prior to appointment, an individual is not an officer, elected official, or employee of the territorial government, a candidate for elected office of the territorial government, or a former elected official of the territorial government."[10]

5. The candidate must also be free of any conflict of personal financial interests and must submit personal financial statements.[11]

6. Through PROMESA, Congress created a unique mechanism to impose the manner in which not only the selection process should take place, but also on how the lists of possible candidates to conform the OB should be assembled. PROMESA starts by creating Categories and according to its' text, the appointment of the members should proceed as follows:

> "The President shall appoint the individual members of the Oversight Board, of which—

---

[6] *Id.* at § 2121(d)(1)(B).
[7] *Id.* at § 2121(d)(1)(C).
[8] *Id.* at. § 2121(d)(1)(D); (d)(1)(E); (d)(2)(A).
[9] *Id.* at § 2121(e)(1)(A).
[10] *Id.* at § 2121(f).
[11] *Id.* at § 2129(a). Notwithstanding this provision, two of the members of the OB were presidents or directors of the Governmental Development Bank (GDB).

the Category A member should be selected from a list of individuals submitted by the Speaker of the House of Representatives; (ii) the Category B member should be selected from a separate, non-overlapping list of individuals submitted by the Speaker of the House of Representatives; (iii) the Category C members should be selected from a list submitted by the Majority Leader of the Senate; (iv) the Category D member should be selected from a list submitted by the Minority Leader of the House of Representatives; (v) the Category E member should be selected from a list submitted by the Minority Leader of the Senate; and (vi) the Category F member may be selected in the President's sole discretion."[12]

7. It is at this point that this adversary proceeding has its matrix; evidently such an imposition collides directly with the Appointment Clause of the Constitution of the United States[13], which provides that it is the President who should nominate and appoint with the advice and consent of the Senate. Nowhere does it mention or imply that an alternate process would be valid in regards to nominating or appointing Officers of the United States. As we will extensively discuss briefly, it is our contention that due to the nature of PROMESA's OB, its appointees are clearly Officers of the United States and therefore, their nomination and appointment process falls under the Appointment Clause.

8. The nomination and appointment process established by PROMESA clearly violates the Separation of Powers by impeding or delimiting how the Executive (President) will fulfill his constitutional mandate and is in direct violation of the Appointment Clause. Therefore, not only such provisions are unconstitutional, but the nominations, appointments and executions of PROMESA's OB are also unconstitutional and null.

9. According to PROMESA Section 104, the OB has the power and authority to hold hearings and sessions, obtain official data from Federal and territorial governments, obtain creditor information, issue subpoenas, enter into contracts, enforce certain laws of the covered

---

[12] *Id.* at § 2121(e)(2)(A).
[13] U.S. Const. Art. II, § 2, cl. 2.

territory, recur to judicial civil actions to enforce its powers, and conduct investigations.[14]
Such a broad and powerful entity should be carefully monitored and be held subject to a
thorough screening to ensure not only its executions but also its inception adhere strictly to
the protections established in the Constitution of the United States.

## II.   THE PARTIES

10. Plaintiff Union de Trabajadores de la Industria Eléctrica y Riego, ("UTIER"), is a labor
union created as a corporation under the Laws of the Commonwealth of Puerto Rico, with its
principal place of business at San Juan, Puerto Rico.

11. Defendant the Puerto Rico Electrical Power Authority, ("PREPA"), is a public
instrumentality and the sole provider of electric power for the Commonwealth of Puerto
Rico, represented in this Title III case under PROMESA by the Financial Oversight and
Management Board for Puerto Rico.

12. Defendant the Financial Oversight and Management Board for Puerto Rico, ("Oversight
Board" or "OB"), was created under Section 101(b)(1) of PROMESA[15] as an "entity
within the Commonwealth government", acting in this Title III case of PROMESA as
representative of PREPA.[16]

13. Defendant José B. Carrión III, is a Category A appointee to the OB and in that capacity,
has the authority to exercise all the powers invested in PROMESA's Section 104.[17]
Plaintiff sues José B. Carrión in his personal and official capacity.

---

[14] *Id.* at § 2124.
[15] 48 U.S.C. § 2121(b)(1).
[16] *Id.* § 2121(c)(1).
[17] 48 U.S.C. § 2124.

14. Defendant Andrew G. Biggs, is a Category B appointee to the OB and in that capacity, has the authority to exercise all the powers invested in PROMESA's Section 104. [18] Plaintiff sues Andrew G. Biggs, in his personal and official capacity.

15. Defendant Carlos M. García, is a Category C appointee to the OB and in that capacity, has the authority to exercise all the powers invested in PROMESA's Section 104. [19] Plaintiff sues Carlos M. García, in his personal and official capacity.

16. Defendant Arthur J. González, is a Category F appointee to the OB and in that capacity, has the authority to exercise all the powers invested in PROMESA's Section 104. [20] Plaintiff sues Arthur J. González in his personal and official capacity.

17. Defendant José R. González, is a Category D appointee to the OB and in that capacity, has the authority to exercise all the powers invested in PROMESA's Section 104. [21] Plaintiff sues José R. González, in his personal and official capacity.

18. Defendant Ana J. Matosantos, is a Category E appointee to the OB and in that capacity, has the authority to exercise all the powers invested in PROMESA's Section 104. [22] Plaintiff sues Ana J. Matosantos, in her personal and official capacity.

19. Defendant David A. Skeel, Jr., is a Category B appointee to the OB and in that capacity, has the authority to exercise all the powers invested in PROMESA's Section 104. [23] Plaintiff sues Defendant David A. Skeel, Jr., in his personal and official capacity.

20. Defendant John Doe 1, is any successor to José B. Carrión III, as an OB member. Plaintiff sues John Doe 1 in his or her personal and official capacity.

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] 48 U.S.C. § 2124.

21. Defendant John Doe 2, is any successor to Andrew G. Biggs, as an OB member. Plaintiff sues John Doe 2 in his or her personal and official capacity.

22. Defendant John Doe 3, is any successor to Carlos M. García, as an OB member. Plaintiff sues John Doe 3 in his or her personal and official capacity.

23. Defendant John Doe 4, is any successor to Arthur J. González, as an OB member. Plaintiff sues John Doe 4 in his or her personal and official capacity.

24. Defendant John Doe 5, is any successor to José R. González, as an OB member. Plaintiff sues John Doe 5 in his or her official personal and capacity.

25. Defendant John Doe 6, is any successor to Ana J. Matosantos, as an OB member. Plaintiff sues John Doe 6 in his or her personal and official capacity.

26. Defendant John Doe 7, is any successor to David A. Skeel, Jr., as an OB member. Plaintiff sues John Doe 7 in his or her personal and official capacity.


### III.    JURISDICTION AND VENUE OF THIS HONORABLE COURT

27. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under PROMESA and the U.S. Constitution.

28. In addition, this Court has jurisdiction under Section 106(a) of PROMESA, which grants jurisdiction to this Court over "any action against the Oversight Board, and any action otherwise arising out of PROMESA, in whole or in part".[24]

29. Plaintiff seeks a declaration and related relief pursuant to 28 U.S.C. §§ 2201 and 2202. An actual and justiciable controversy has arisen and exists between the parties with respect to the issues and claims alleged herein.

---

[24] 48 U.S.C. § 2126(a).

30. This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and Section 310 of PROMESA, which provides "The Federal Rules of Bankruptcy Procedure shall apply to a case under Title III of PROMESA and to all civil proceedings arising in or related to cases under Title III of PROMESA".[25]

31. Venue is proper in this District under Section 307 of PROMESA.[26]

32. Plaintiff has standing to bring this adversary proceeding, as creditor and party in interest in the above-captioned Title III case according to Section 301 of PROMESA[27] which incorporates Section 1109 of the Bankruptcy Code.[28]

## IV.    LEGAL AND FACTUAL BACKGROUND

### A. PREPA

33. PREPA, the Puerto Rico Electric Power Authority, is a public corporation organized under the laws of the Commonwealth of Puerto Rico.

34. This corporation is a separate instrumentality from the Government of the Commonwealth, with the capacity to sue or be sued and employs approximately 9,550 employees.

35. PREPA is the main provider of electricity production and distribution for the Commonwealth. Although, there are private companies that generate energy, they supply their production through PREPA's grid. There are no other companies on the Island that distribute electricity.

---

[25] 48 U.S.C. § 2170; Fed. R. Bankr. P. 7001.
[26] 48 U.S.C. § 2167.
[27] *Id.* § 2161.
[28] 11 U.S.C. § 1109.

**B. UTIER**

36. The UTIER was founded in the early 1940´s and it is one of four labor unions that represent thousands of PREPA employees.

37. There are approximately 9,550 employees in PREPA, of which an estimate of 6,775 belongs to a union. Of those 6,775, approximately 3,600 are represented by the UTIER.

38. UTIER employees are responsible for the operation and conservation aspects of PREPA.


**C. PROMESA AND THE OVERSIGHT AND MANAGEMENT BOARD.**

39. As previously stated, On June 30, 2016, President Barack Obama signed PROMESA into law. The stated purpose of PROMESA is to "establish an Oversight Board to assist the Government of Puerto Rico, including instrumentalities, in managing its public finances, and for other purposes".[29]

40. PROMESA provides for the creation of the Oversight Board, which is in charge, among other duties, of providing a method for Puerto Rico to achieve fiscal responsibility and access to the capital markets.[30]

41. Once the members where selected, they became what is known as the Oversight Board for Puerto Rico ("OB"), which was established on the grounds of the power of Congress to dispose of and make all needful rules and regulations for territories, as provided in the Constitution of the United States in its Article IV, Section 3.[31]

42. As stated in Section 101(c), Congress gives the following treatment to the OB, "[a]n Oversight Board established under this section-- (1) shall be created as an entity within the

---

[29] H.R. 5278, 114th Cong. (2016) (Preamble).
[30] 48 U.S.C. § 2121(a).
[31] U.S. Const. Art. VI, § 3.

territorial government for which it is established in accordance with this subchapter; and (2) shall not be considered to be a department, agency, establishment, or instrumentality of the Federal Government."[32]

### D. OFFICERS OF THE UNITED STATES UNDER THE APPOINTMENT CLAUSE OF THE CONSTITUTION

43. Article II, Section 2, Clause 2 of the United States Constitution states that the President:

> "…shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."[33]

44. Such section is known as the Appointment Clause and it lays down the corresponding procedures to appoint the officers of the United States, which has been established by law.  These procedures apply to all officers of the United States "whose appointments are not otherwise provided for in the Constitution".[34]

45. The Appointment Clause does not expressly define who is an officer of the United States, but there are numerous reasonable and founded efforts of its interpretation that have been outlining it.  The Court has described the hallmarks of "office" around the elements of degree of authority, tenure, duration, emolument and continuing duties, among others.[35]  Generally, Courts have agreed that "officers of the United States" as used in the Appointment Clause infers **"any appointee exercising significant authority**

---

[32] 48 U.S.C. § 2121(c).
[33] U.S. Const. Art. II, § 2, cl. 2.
[34] *Buckley v. Valeo*, 424 U.S. 1, 127 (1976).
[35] Claire M. Sylvia, *The False Claims Act: Fraud Against the Government* § 3:5 (2017).

**pursuant to the laws of the United States.**"[36]   The exercise of such significant authority cannot be discharged in any federal employee or person other than an Officer of the United States properly speaking.  It marks the line between an officer and non-officer.[37]

46. The United States Department of Justice ("DOJ") has concluded that a position that contains the following two (2) characteristics of a federal office, which they refer to as essential, is subject to the Appointment Clause, that is: (1) "it is invested by legal authority with a portion of the sovereign powers of the federal government, and (2) it is continuing."[38]

47. A person holding a position like this, however labeled, must be properly made an "Officer of the United States" by being appointed pursuant to the procedures specified in the Appointment Clause.[39]

## E. PROMESA'S OVERSIGHT BOARD APPOINTMENTS UNDER THE APPOINTMENT CLAUSE OF THE CONSTITUTION OF THE UNITED STATES

48. The DOJ has adopted the "view of the force of the Appointment Clause" by stating that "is not within Congress power to exempt federal instrumentalities from the Constitution's structural requirements, such as the Appointment Clause",[40] and cannot use artifices to evade such constitutional obligation.

---

[36] *Id. See also Buckley v. Valeo*, 424 U.S. at 126. [Emphasis Added]
[37] *Edmond v. U.S.,* 520 U.S. 651, 662 (1997).
[38] *Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 74 (2007), https://www.justice.gov/olc/file/477046/download.
[39] *Id.*
[40] *Id*. at 75.

49. The first essential element implies that an officer has been delegated with the powers conferred in turn to the United States by the Constitution.  These officers help the President to fulfill his duty, reason why the delegation of sovereign authority is a key element to determine if we are before an office.  On the other hand, the second essential element, whether the position is continuing, could imply both a permanent position as to temporary position.  "Continuing does not mean permanent," therefore "a temporary position may also be continuing if it is not personal, transient or incidental."[41]  As stated in the DOJ memorandum, "[t]he Constitution refers to an office as something that one "holds" and "enjoys" and in which one "continues," and these descriptions suggest that an office has some duration and ongoing duties."[42]  As for the personal factor, it implies that the position goes beyond the person that holds it, which means, "that the existence of the office is not contingent on a particular person holding it."[43]  The second factor, transient, refers to whether it is "less fleeting and more enduring"[44] or is likely to be, which could establish its continuity.  Regarding the third factor, "the duties should be more than "incidental" to the regular operations of government."[45]

50.  In addition, DOJ points out in its memorandum other criteria that has been discussed as part of the characteristics of a position, but have not been considered essential as the ones mentioned above.  These criteria are: first, by whom the officer was appointed, regarding the method of appointment.  Second, whether the office is created or established by law, which must be analyzed with caution since Congress could authorize a contract as an artifice to evade the Appointment Clause.  This is why it is important to

---

[41] Gary Lawson, *The "Principal" Reason Why the PCAOB is Unconstitutional*, 62 Vand. L. Rev. En Banc 73, 83 (2009).
[42] *Officers of the United States Within the Meaning of the Appointments Clause, supra* note 26, at 101.
[43] *Id*.
[44] *Id*. at 112.
[45] *Id*.

Case:17-00228-LTS   Doc#:1   Filed:08/06/17   Entered:08/07/17 00:09:19   Desc: Main
Document     Page 13 of 26

analyze the office or position under the scrutiny of the essential elements, which are whether is legally invested with sovereign authority of the federal government and whether it is continuing. Third, if an office exists, whether there was an oath, keeping in mind that is a mere incident given that an office may exist without it. As a fourth, the emoluments, referring to whether there exist a salary, fee, perk or some profit, which has been pointed out as a common characteristic, but not an essential one.[46] According to the DOJ memorandum, "provision for pay may aid in determining the nature of the position, but it is not conclusive."[47] As fifth and final, we have the commission criteria, which comes from the Constitution itself when it states that the President "shall Commission all the Officers of the United States"[48], meaning that he will give them an instruction, command or duty to be performed.[49]

51. As reiterated in *Commonwealth of Puerto Rico v. Sánchez Valle, et al,*[50] Puerto Rico is a territory thus, local and federal laws arise from the same sovereignty. PROMESA's constitutional basis is stablished in Section 101 (b) (2) "[t]he Congress enacts this Act pursuant to article IV, section 3 of the Constitution of the United States, which provides Congress the power to dispose of and make all needful rules and regulations for territories." Also, PROMESA in Section 5 (20) defines Puerto Rico as a territory and (18) defines the ''territorial government'' as the government of a covered territory *i.e.*

---

[46] *See generally Officers of the United States Within the Meaning of the Appointments Clause,* 31 Op. O.L.C. 73 (2007), https://www.justice.gov/olc/file/477046/download.
[47] *Id*. at 119.
[48] U.S. Const. Art. II, § 3.
[49] *See generally Officers of the United States Within the Meaning of the Appointments Clause, supra* note 34.
[50] Commenting on a Puerto Rican statute that overlapped with a federal law, we explained that this "legislative duplication [gave] rise to no danger of a second prosecution" because "the territorial and federal laws [were] creations emanating from the same sovereignty." *Id*., at 264 Id., at 264; see also Heath, 474 U.S., at 90 (noting that federal and territorial prosecutors "d[o] not derive their powers to prosecute from independent sources of authority"). *Commonwealth of Puerto Rico v. Sánchez Valle Et Al*, 579 U. S. ____ (2016) at page 11, decided June 9, 2016 [Notes omitted].

13

Puerto Rico, by Section 5 (8). PROMESA as a United States Act, enjoys supremacy and prevails over any general or specific provisions of territory law, State law, or regulation that is inconsistent with it.[51]  In turn, Puerto Rico and its instrumentalities are subject to compliance with Federal laws, regardless the enactment of PROMESA, except as otherwise provided in such chapter.[52]  On the other hand, OB's members enjoy an autonomy where neither the Governor nor the Legislature may (1) exercise any control, supervision, oversight, or review over them or their activities; or (2) enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of PROMESA, as determined by the OB's members.[53]  Also, they have powers with respect to Puerto Rico's budget with the designation of a funding source, not subject to subsequent legislative appropriations, and are subject to the Federal financial conflict of interest requirements.[54]  This can only and forcedly suggest that the OB's office established by PROMESA and currently occupied by the members of the OB for Puerto Rico are inevitably under the definition of "Officers of the United States", as provided under the Appointment Clause of the United States Constitution.  The opposite would be that the OB's members are officers of the territory (Puerto Rico), as suggested by PROMESA in Title I, section 101(c), where it states that OB is an entity established and created by law within the territorial government and "shall not be considered to be a

---

[51] 48 U.S.C. § 2103 (2016).
[52] *Id.* at § 2106.
[53] *Id.* at § 2128(a).
[54] Promesa's SEC. 109. ETHICS.
(a) CONFLICT OF INTEREST.—Notwithstanding any ethics provision governing employees of the covered territory, all members and staff of the Oversight Board shall be subject to the Federal conflict of interest requirements described in section 208 of title 18, United States Code.
(b) FINANCIAL DISCLOSURE.—Notwithstanding any ethics provision governing employees of the covered territory, all members of the Oversight Board and staff designated by the Oversight Board shall be subject to disclosure of their financial interests, the contents of which shall conform to the same requirements set forth in section 102 of the Ethics in Government Act of 1978 (5 U.S.C. App.).

department, agency, establishment, or instrumentality of the Federal Government".[55] However, that is and absurd and illogic conclusion given the clear and express fact that OB's members enjoy an autonomy where neither the Governor nor the Legislature may (1) exercise any control, supervision, oversight, or review over them or their activities; or (2) enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of PROMESA, as determined by the OB's members.[56]

52. Despite such provision specifying that OB's members are not Federal Government officials for statutory purposes, we are of the firm belief that given all the constitutional and statutory framework, the Oversight Board is part of the Federal Government for constitutional purposes.[57]

53. First, they are established by law enacted by the Congress of the United States under their power to dispose of and make all needful rules and regulations for territories.[58] Their duties and means of appointments are set forth by a federal statute. They unquestionably exercise significant discretion in performing functions that are invested of the sovereign powers of the Federal Government. Such is their discretion that, as mentioned above, the OB is not subject to the control, review or oversight of Puerto Rico's Government, but not so with respect to the Federal Government. Also, we can add that they can only be removed in the event of the expiration of their term of service, which is three (3) years or by the President only for cause. Evidently, the territorial government has no inherence in such office. Finally, it is to be noted, that the OB as an entity, has a decision making power regarding the administration of the finances of the

---

[55] *Id.* at § 2121(c).
[56] *Id.* at § 2128(a).
[57] *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 485 (2010).
[58] U.S. Const. Art. VI, § 3.

territory, which greatly impacts the territory laws, regulations and previous agreements, and, in a certain way, is deciding the future of the territory's economy with no power or authority exercised by the Government of Puerto Rico.[59]  The only inherence of the Government of Puerto Rico in this subject is a concession that was provided by Title I, section 101(e), which lets the Governor or the Governor's designee to be an ex officio member of the OB, but without voting rights.

54. Undoubtedly, the OB exercises substantial authority over Puerto Rico pursuant to the laws of the United States.  They are empowered to make determinations that bind the territory without providing for direction or supervision by principal officers.[60]  They are annually required to report to the President, Congress, the Governor and the Legislature, the territorial government progress in meeting PROMESA objectives, the assistance provided by the OB, and recommendations to the President and Congress on changes to PROMESA, or other Federal laws or actions needed to comply with the Certified Fiscal Plan.[61]  The scope of the supervision power of the Oversight Board includes designating the instrumentalities that will be covered by PROMESA; require from the Governor the submission of Fiscal Plans and monthly or quarterly reports on budget of such instrumentalities, including instrumentalities that their budget is not subject to legislative approval if its designated as a covered territorial instrumentality.[62]  At its sole discretion, the OB may designate any territorial instrumentality as a covered territorial instrumentality, as well as exclude them if they determine appropriate.[63]  Likewise, the OB has powers to hold hearings and sessions, where it can take testimony, and receive

---

[59] *See generally Freytag v. C.I.R.*, 501 U.S. 868 (1991).
[60] *See generally Association of American Railroads v. U.S. Dept. of Transp.*, 821 F.3d 19 (2016).
[61] 48 U.S.C. § 2148(a).
[62] *Id.* at § 2121(d).
[63] *Id.*

evidence; administer oaths or affirmations; obtain official data from both the Federal government and the Government of Puerto Rico, with the difference that for Federal government it needs the approval of the head of the department or agency; obtain creditor information; issue subpoenas; enter into contracts; and enforce the law and its powers under PROMESA.[64]

55. Under their responsibilities the OB has the approval of Fiscal Plans and Budget, as mentioned above; require the submission of reports and act upon noncompliance with budget by the Government of Puerto Rico; review activities of the Government to ensure compliance with the fiscal plan, including the review on any law enacted or proposed; submit recommendations to the Governor or the Legislature on financial stability and management responsibility; issue a restructuring certification regarding a covered entity under PROMESA; exercise authority of approval related to debt issuance; make determination on whether the pension system of the territorial government is materially underfunded; and intervene in any litigation filed against the territorial government to seek injunctive relief, including a stay of litigation.[65]

56. All the powers and responsibilities of the OB for Puerto Rico that have been mentioned in the paragraphs above demonstrate "significant interpretive and rulemaking powers, such as the power to issue regulations or make determinations without supervision, or significant enforcement powers" that do "constitute significant authority", according to Courts in various cases regarding the Appointment Clause.[66]  Even more, the authority to enforce laws, or appoint the agents charged with such duties of enforcement, is

---

[64] *Id.* at § 2124.
[65] *Id.* at §§ 2141-2152.
[66] John T. Plecnik, *Officers under the Appointments Clause*, 11 Pitt. Tax Rev. 201, 214 (2014).

characteristic of the Executive Power.[67]  Thus, the OB has significant independence in determining Puerto Rico's priorities and intervening in financial matters without a principal officer preapproval or direction.  This leaves no other conclusion than that the members of the OB for Puerto Rico are not only officers of the Federal Government, but are principal officers as defined in the jurisprudence by the Courts of the United States.[68] Unlike an inferior officer, the OB for Puerto Rico does not have a relationship with some higher ranking officer or officers below the President;[69] they are not subject to removal by any higher Executive Branch official other than the President himself; they are empowered by PROMESA to perform broad duties and powers; and their jurisdiction is limited to the territorial subject to the Act, nevertheless is so broad that is not subject to neither control nor review of the Government of Puerto Rico.  As of their tenure, the term of service is of three (3) years, but it does not imply that it's over upon expiration, given that the Act itself provides for continuance.  The latter is an essential element for an appointment to be conceived as an officer of the United States.  As discussed previously, the element of continuing in an office implies that the position goes beyond the person that holds it, as it does in the case of PROMESA.  In the event of a vacant in the OB for Puerto Rico, the Act provides to appoint a new person.  Also, upon the expiration of the term of service, an OB member can be reappointed, and if he's not, he may continue to serve until a successor has been appointed.[70]

57. Regardless the assent of the Executive (President) to PROMESA, which contains a provision contrary to the Constitution, it does not shield it from judicial review.  In

---

[67] *Buckley v. Valeo*, 424 U.S. at 139.
[68] See generally *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010).
[69] *Edmond v. U.S.*, 520 U.S. at 662.
[70] 48 U.S.C. § 2121(e)(5) (2016).

*Freytag*, the United States Supreme Court pointed out that "[t]he structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic."[71] Therefore, we conclude that the members of the OB for Puerto Rico are indeed Officers of the United States within the meaning of the Appointments Clause, and as such must be appointed in the manner prescribed by that Clause.

## F. UNCOSNTITUTIONALITY OF THE APPOINTMENTS OF PROMESA'S OVERSIGHT BOARD

58. The Appointment Clause "embodies both separation of powers and checks and balances."[72] It defines "unique roles for each branch in appointing officers",[73] by providing that "the President may appoint principal officers only with Senate approval,"[74] and that "Congress may confer appointment power over inferior officers to the President, courts, or department heads but may not itself make appointments."[75] "The Framers intended to place power to act in one constitutional actor and the ability to check that power in certain ways in another."[76]

59. As it can be noted, the Appointment Clause is composed of two (2) parts; (1) the power of nominating people to federal offices conferred to the President and (2) the power to consent the nominee before he is appointed conferred to the Senate.[77] It is forced to conclude that "[t]he Constitution thus limits the President's discretion in appointment,

---

[71] *Freytag v. C.I.R.,* 501 U.S. 868 (1991) at 880.
[72] *Bandimere v. Securities and Exchange Commission*, 844 F.3d 1168, 1172 (2016).
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] Hanah Metchis Volokh, *The Two Appointments Clauses: Statutory Qualifications for Federal Officers*, 10 U. Pa. J. Const. L. 745, 751 (2008).
[77] *Id.*

but not in nomination."[78]  Regarding the nomination power, we can say that it is solely given to the President, and no one, including Congress, should interfere with such power, this with the understanding that it should be exercised "by and with the Advice and Consent of the Senate".[79]  But the advice and consent of the Senate cannot imply interference, such as stating statutory qualifications for an office or by requiring the President to select candidates from a list provided.  This type of situation can suggest that the President's discretion is being restricted or limited.  "Neither the Senate in its advice and consent role nor the Congress as a whole through its legislative power can prescribe the individual to hold an office."[80]

60. The OB has been established for Puerto Rico on the grounds of the power of Congress to dispose of and make all needful rules and regulations for territories, as provided in the Constitution of the United States in its article IV, section 3.[81]  This Oversight Board consists of seven (7) members that were supposed to be appointed by the President of the United States as laid down in PROMESA.[82]  But it is also stated in section 101, that the appointees should be selected from a list, which must be submitted by either a member of the House of Representatives or the Senate.[83]  The OB's members are divided into categories from A to F, in order to identify from which list they have to be appointed,[84] or in the case of Category F, where only was granted to the President the sole discretion to nominate someone, but without further consideration, advice or

---

[78] *Id.*
[79] U.S. Const. Art. II, § 2, cl. 2.
[80] Metchis Volokh, *supra* note 61, at 753.
[81] 48 U.S.C. § 2121(b) (2016).
[82] *Id.* at § 2121(e)(1)(A).
[83] *Id.* at § 2121(e)(2)(A).
[84] *Id.* at § 2121(e)(1)(B).

consent from the Senate.[85]  As can be noted, Congress has limited the power of nomination in the context of PROMESA.  All the authorities cited agree that it is the sole discretion of the President and that must be exercised within the power of nominating people to federal offices, and that Congress cannot interfere with it in any manner, neither by providing a list of candidates nor providing statutory qualifications.[86]

61. PROMESA tries to remedy this intrusion of Congress by stating that the appointment of an OB's member in Categories A, B, C, D, or E "shall be by and with the advice and consent of the Senate, unless the President appoints an individual from a list" provided, "in which case no Senate confirmation is required".[87]  It even points out that in the event of a vacancy, the corresponding congressional leader, depending on the category to which the vacancy belongs, shall submit a list to appoint a new member.[88]  A list of candidates or statutory qualifications does not constitute and cannot be interpreted as a post-nomination advice and consent of the Senate, particularly when there is no further consideration of the candidates qualifications, confirmation hearings or evaluation of any kind by the Senate.  The Appointment Clause clearly prescribes the procedure to appoint all the officers of the United States, giving the President the power to appoint them with the approval of the Senate.[89]  The Constitution also provides for an alternate process when we are before a category of "inferior officers," where it grants Congress the discretion to vest the appointment of such officers in the President alone, in the Courts of Law, or in the Heads of Departments.[90]  As noted, the Constitution provides "a

---

[85] *Id.* at § 2121(e)(2)(A).
[86] Metchis Volokh, *supra* note 61, at 752.
[87] 48 U.S.C. § 2121(e)(2)(E) (2016).
[88] *Id.* at § 2121(e)(2)(F).
[89] 32 Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice & Procedure* § 8281 (1st ed. 2017).
[90] U.S. Const. Art. II, § 2, cl. 2.

separate power in Congress to delegate the appointment of inferior officers," but "does not empower Congress to vest appointment power in itself"[91] or "in its officers".[92] The Constitution by clear implications forbids Congress to vest authority to appoint officers of the United States to any person other than the President himself.[93] It is important to note that "[t]he prescribed manner of appointment for principal officers is also the default manner of appointment for inferior officers,"[94] regardless of the exception just discussed.

62. There is no role given either to the Senate or to Congress as a whole in the process of choosing the person who will be nominated by the President for appointment.[95] Also there is no discretion for Congress to decide whether to "pick and choose aspects of each process and combine them into a new process any more than it could create a new process without reference to the Constitution".[96] The procedure already embodies a careful set of checks and balances that cannot be deviated from. A subtle change in the process or its steps is not permissible under the Constitution of the United States. For all these reasons, it must be concluded that the method of appointment prescribed by PROMESA is incompatible with the Appointment Clause. Thus, this entails that the OB's members have been appointed in an unconstitutional manner and as such they are not entitled to exercise the powers and authority conferred by PROMESA.

---

[91] Charles Alan Wright & Charles H. Koch, Jr., *supra* note 57.
[92] *Buckley v. Valeo*, 424 U.S. at page 135.
[93] *Id.*
[94] *Edmond v. U.S.,* 520 U.S. at 660.
[95] Harvard Law Review Association, *Congressional Restrictions on the President's Appointment Power and the Role of Longstanding Practice in Constitutional Interpretation*, 120 Harv. L. Rev. 1914, 1919 (2007) (quoting Kennedy, J., concurring in the judgment in *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 483 (1989)).
[96] Metchis Volokh, *supra* note 61, at 751.

## V.     FIRST PRAYER FOR RELIEF

63. Plaintiff repeats and alleges once again, the allegations contained in paragraphs 1
through 61 hereof as if fully set forth herein.

64. An actual and justiciable controversy has arisen and exists between the parties with
respect to these issues and claims, and a declaratory judgment is necessary to resolve
such controversy.

65. Plaintiff is entitled to an order declaring that PROMESA Section 101, which provides for
the appointment process of the Oversight Board, violates the Appointment Clause and the
Separation of Powers of the Constitution of the United States of America.

## VI.     SECOND PRAYER FOR RELIEF

66. Plaintiff repeats and alleges once again, the allegations contained in paragraphs 1
through 64 hereof, as if fully set forth herein.

67. Plaintiff is entitled to an order declaring that since the appointment of the seven (7)
members of the Oversight Board was conducted in accordance with the unconstitutional
process provided by Section 101 of PROMESA, the members of the Oversight Board are
therefore unconstitutionally holding office by definition.

## VII. THIRD PRAYER FOR RELIEF

68. Plaintiff repeats and alleges once again, the allegations contained in paragraphs 1
through 66 hereof, as if fully set forth herein.

69. Plaintiff is entitled to an order declaring that all the Oversight Board's acts and
determinations taken from the time of their appointments to the present are

23

unconstitutional and invalid due to the fact that they are in open violation of the Appointment Clause and the Separation of Powers enshrined in the Constitution of the United States of America.

## VIII. FOURTH PRAYER FOR RELIEF

70. Plaintiff repeats and alleges once again, the allegations contained in paragraphs 1 through 68 hereof, as if fully set forth herein.

71. Defendants should be enjoined and stayed from pursuing this and any Title III cases, holding hearings or sessions, obtaining official data or creditor information, issuing subpoenas, entering into contracts, enforcing any laws of the covered territory, recurring to judicial civil actions to enforce powers, conducting investigations or any other power or authority provided by PROMESA, until they are recast to comply with the Appointment Clause of the United States Constitution and an Oversight Board is constitutionally appointed.

## IX. RELIEF DEMANDED

WHEREFORE, in view of the foregoing, Plaintiff respectfully requests from this Honorable Court to enter a judgment against defendants as follows:

a. An order declaring that PROMESA Section 101, which provides for the appointment process of the Oversight Board, violates the Appointment Clause and the Separation of Powers of the Constitution of the United States.

b. An order declaring that since the appointment of the seven (7) members of the Oversight Board was conducted in accordance with the unconstitutional process

24

provided by Section 101 of PROMESA, the members of the Oversight Board are therefore unconstitutionally holding office by definition.

c.  An order declaring that all the Oversight Board's acts and determinations taken from the time of their appointments to the present are unconstitutional and invalid due to the fact that they are in open violation of the Appointment Clause and the Separation of Powers enshrined in the Constitution of the United States of America.

d.  An order declaring that defendants should be enjoined and stayed from pursuing this and any Title III cases, holding hearings or sessions, obtaining official data or creditor information, issuing subpoenas, entering into contracts, enforcing any laws of the covered territory, recurring to judicial civil actions to enforce powers, conducting investigations or any other power or authority provided by PROMESA, until they are recast to comply with the Appointment Clause of the United States Constitution and a Oversight Board is constitutionally appointed.

RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this day 6 of August 2017.



Urb. Constancia
2803 Calle San Francisco
Ponce, Puerto Rico 00717
Tel: (787) 848-0666
Fax: (787) 841-1435

25

/s/Rolando Emmanuelli Jiménez
Rolando Emmanuelli Jiménez
USDC: 214105

/s/Yasmín Colón Colón
USDC: 230814

Emails: rolando@bufete-emmanuelli.com
          yasmin@bufete-emmanuelli.com
          notificaciones@bufete-emmanuelli.com